Good morning. May it please the court, David Wildman, Deputy Attorney General for the Warden, James A. Yates. May I reserve two minutes of my time for rebuttal? This case comes to this court in the ADPA. The Supreme Court has repeatedly said that habeas reserved for extreme malfunctions of the justice system and that's not what occurred here. The District Court's judgment found incredibly huge credibility problems with the evidence presented by Petitioner in the State Trial Court. And then the District Court judgment found an unreasonable determination of the facts in a 2254 D2. Even under 2254 D2, we look to the Supreme Court for authority on what the law is. The Supreme Court has twice addressed what kind of hearing is needed when there's a question of juror misconduct. We had the Rummer case. Why don't you just, in your first two sentences, make out the Petitioner's case by saying that it was all based on a credibility finding? How can you make a credibility finding on a piece of paper? I mean, why? Yes, there may be instances in which you don't have to have a hearing, but if you're going to discount what somebody says because you don't believe them, then don't you have to see them? Well, what the trial court did in this case is he said to defense counsel, okay, we've got this declaration, although it's four months late, it's from somebody who's obviously part of the defense team, allied with the defendant, but we're going to assume whatever you say here is true and determine... Didn't the declaration itself explain why it was four months late? Which was that he tried to bring it to the attention of the trial lawyer and the trial lawyer wouldn't do anything? That's precisely what Mr. Gardner put in his declaration. One thing I found troubling about the state court's decision was that they, the timing, the question about the timing of when the the juror had made the trial court and the appellate court relied on, which was published on December 12th, and so, and the statement was allegedly made on December 10 or 11, not sure quite which is right, but how could, how could they make a ruling that's legitimate based on an article that had yet to be published? Well, the district court also focused on this issue. What we have here is a declaration which says that it was December 11th. The district court did analysis based on when the instructions were and when the jury started deliberating, said it had to be either the 10th or 11th. What the trial court and the California Court of Appeal did is it looked at the, at the declaration. It said, okay, the juror had a newspaper. The juror put down the newspaper and said, I saw something in the paper. The obvious reference there, no matter which date it is, is that it was an article that came out during the pendency of the trial before the jury deliberations. Weren't there five articles that were put before the trial court? At least there's reference to five articles, and we asked for the state court record and went through it, and there was, there were no articles that were part of the state court record. That's correct. They were never made part of the appellate record in the state court. Well, how can that be right? How can you make a rolling when you don't even know what the juror was looking at or could have been looking at? What the trial court and the California Court of Appeal did is it discounted any articles that came out after the jury's verdict. The question is that they talked about an article on the 12th. Now, you know that whatever article the juror saw was before the 12th. And you admit that there were five other articles that were before the state trial court judge, right? There were a number of articles that had come out a year previous to the trial. Which he said were more prejudicial than the 12th. So he based his decision on the 12th, the article of the 12th. The trial court based its decision on the one single article that came out during the pendency of the trial. It came out after the time the juror had this conversation. If one assumes that the date on here, the December 11th, is the correct date, I think what the trial court was looking at is there was only one possible article that the juror could have... We don't know that's the only possible article. We don't even know what paper the juror read. Nobody asked the juror what papers she reads. Because there was no hearing. There were five articles from one newspaper. There were at least three newspapers, according to the record, that covered this trial. I mean, you know, this is... It's really remarkable that this decision, everywhere until I got to the district court, is based on an article that the juror could not have read. Well, I think what the state court was looking at is the fact that it had vordered the jurors on the articles that came out the year before. The jurors had all said that they had not read any of the articles or... That could have been a lie. It could not have been a lie that she didn't read the article on the 12th, which is the only article that the judge bases on. And the whole thing could be a lie, and this guy could not have talked to her, and she couldn't... But it's so crazy for... I mean, that's the whole point of the case law, isn't it? Which is to find out. Well, certainly, and there's a real question of credibility here, and that may be why his first attorney, the actual trial attorney, didn't take Mr. Gardner seriously or didn't pursue this. Right, and how do you decide that credibility? Well, the trial court didn't make a determination of that credibility, although it must have been in the past. And the problem we have now from not having done it then, I mean, as I understand the four months, it was a timely motion for a new trial, no? Yes, it was at the sentencing... So I don't know what the four months has to do with it. It was in time. It was procedurally in time. Well, it was after the trial had concluded and after the jury had been dismissed. Right, but we know why that was, or at least we know why he said it was. So, but it was not untimely. So it was timely. And, you know, here we're all speculating about a hundred things, and not only that, who knows if the juror exists anymore or can be found? Who knows if Mr. Gardner exists or can be found? I mean, now we're all at a, you know, a huge disadvantage in terms of finding out what could have happened. And why anybody, including the trial judge and the prosecutor, just didn't say, okay, let's get these people in here and find out what happened instead of creating this huge mess. I don't know. Well, I think there's a... I don't know if I want to say bias, but there's a movement in the court system not to bring back jurors on every single... Not to bring back Mr. Gardner and find out, at least first, find out how his story holds up. Well, it looks from the record, what the trial court did is it said we don't need to bring Mr. Gardner in here... Because he made a basic mistake of fact. Because he said that the article is all right, but he would have the wrong article. I mean, it's remarkable that nobody along this case in California seemed to care that the article couldn't have been the article they were talking about. Could And also, the trial court judge, and the trial was in Pasadena, said he had five articles from Pasadena Star News, and they were dated October 20, October 24, December 20, December 21. And then he relies on the December 12. And those are all 2000. And then he relies on the December 12, 2001. And he says, that article is okay. Not like the other articles. Yeah, the other articles were calling him a serial, whatever, rapist. I don't remember what he did. How do you explain that nobody noticed that this article was after the time that it could have been the article? Why didn't the district court, I mean the trial court, mention that? Why didn't the court of appeals mention that? Well, I don't think that the trial court made a mistake and thought that the juror had read it. It was simply looked at the record and said, this is the one article that could have been during the pendency trial. But where did these articles come from that were before the trial court? Who brought them in? According to the record, it looks like the defense attorney brought them in, handed them to the judge and to the prosecutor, and he printed them. It appears off the internet. I have an article here from October 19, 2000. It's not one of the ones mentioned. This is city news that refers to him as a serial rapist. So it's yet another article. Another problem here is how do we know she was reading the Pasadena Star News as opposed to something else? We don't know anything. And that's presumably why the Supreme Court says she should have hearings. Why would you think she was reading the Pasadena? And why is it so unlikely? We don't know where she lived. She may have lived in and around the area here. There were three newspapers, they said, where she could have read it. And nobody knows where she lives, so. But we do know the trial was in Pasadena, so she would have had access to the papers. Well, that's clearly one of the papers it could have been in. And the judge did base his decision on that article of the 12th. I don't think there's much disagreement about that. And to say that article was a neutral article is totally irrelevant, but he based his decision on the article could not have caused prejudice because it's an innocuous article. That couldn't have been the article in question. Even if one assumes that it was the other articles that came out a year earlier, prior to the trial, before the juror was even under jury service, the juror didn't say anything that she wasn't willing to deliberate with the other jurors, that she had pre-decided the decision. All she said that it was an open and shut case. The juror had been sitting there for three weeks listening to the evidence. The evidence consisted of separate victims in separate instances, six of them, all identifying Mr. Novello as the perpetrator. Based on that evidence, which the juror had just been hearing for three weeks or so, this was an open and shut case. It was sort of, this juror never said, I saw some evidence that was not as part of the record, that I saw a confession that wasn't part of the record, or that I went to one of the crime scenes. She didn't say anything about reading evidences outside the record. Therefore, even if she had read those articles that came out a year before, there's no evidence that it was prejudicial. Except the judge said these other articles are more prejudicial. Well, the judge, I think the only thing we have from the record here is that the judge said, described him as a serial rapist, and I think that was simply the allegation of the whole trial that the prosecutor was making, that he was a serial rapist. I don't know what newspapers she read, but I know the judge felt that those articles were more prejudicial. And I can't, I think if the judge had known that the article he was ruling on was not the article in question, he might have handled it differently. Such as Howland Aaron. Well, I still respectfully would argue that it was reasonable for the judge to assume it had to be the one article that had come out during the pendency of the trial. The one article that came out after this conversation took place between the witness and the juror. And it even says it in the first paragraph. It talks about jurors began deliberating Tuesday. So we know it came out after the deliberations began. Well, certainly based on this declaration, we have, there's a factual discrepancy. It couldn't have been the article on the 12th at the time the jurors were hearing, or the discussion of the instructions was going on before the jurors started deliberating. That couldn't have been. So all the district court judge did here, and he's a very reasonable district court judge, is just say, look, I'm not saying I even believe this declaration, but there should be a hearing on this. Let's just get this straightened out. That's all he did. He granted very limited relief here. That's correct. I don't know why you just didn't go have the hearing instead of bringing it up to us. He didn't grant relief. He said, let's just find out what happened. If you can find either the juror at this point, how long ago was this trial? Ten years ago? I believe it was ten years, yes. And I don't know what the witness is. Who knows where he is? Who knows who's alive? That's the problem with reconstructing it at this date, but that's not the defendant's problem. It's the state's problem. I mean, you can hope that they're around and you can have a real hearing. Is the judge alive? I didn't recognize the name of the judge. I believe he's still a judge. I think I looked that up. It's Edward Simpson. I don't know. I believe he's still sitting. This creates a terrible practical problem, maybe. But if it does, it's Judge Berzon. Just have a hearing and you don't have these problems. Well, I don't know. Do you have anything else you'd like to add? Simply to reiterate, I don't think that the two Supreme Court cases mandate having a live testimony hearing and that it was reasonable for the trial court to assume that it was the one paper that the juror was referring to that she had been holding. Thank you. Good morning, Your Honors. Lisa Bass is for appellee. Edward Novello. I don't have much to add. I would like to emphasize, though, that I believe that the prejudicial error here is twofold or that the prejudice on the part of the juror is twofold. Independent of the newspaper article, the statement by the juror clearly indicated that she had made up her mind before the close of the case without hearing any of the arguments, without being instructed on the law, and without being in the jury room and the decision being part of a deliberative process that's independent of the outside influence of the newspaper article. I also disagree with the state's characterization of the case as the article not having an influence on the juror, because if you look at it, we're not sure which article, but how can you disagree about whether it had an influence? Well, because the juror actually said it did. And if you look at the declaration, which is part of the report and recommendation, and it's paragraph 17 in the declaration, she said, this case is easy. I saw it in the paper. It's an open and shut case. This would imply that the newspaper account she read animated her decision. Except it's such a weird, unlikely thing to say after the whole trial's over. I mean, you'd think she would have some interest in what she actually saw at the trial. I mean, it is an implausible declaration for lots of reasons, that being one of them. I mean, somebody would suggest that what she thinks about the case is based on a newspaper article she read a year before when she just sat through a several-day trial. Well, it may be that I know that the state asserted that this could not possibly be true because she was questioned during voir dire. That's a different point. However, it's entirely possible that she did look these articles up on the Internet after the trial started, so maybe she truthfully answered the questions at the time. And then, as the trial began, looked it up in violation of the instructions. So it's possible that the misconduct occurred sometime afterwards. In any event, even if... Hold on, let me ask you a question here. Certainly. One thing that puzzled me here was several references, I think, by the state or maybe by both sides in the hearing, where the statement was, they referred to it as having been made at the last hearing. Quote, I was following it in the paper. Now, where did that statement come from? When was it made? Well, in the declaration of Gardner, what he says, he says the juror said, I saw it in the paper. So it's, I think the, I was following it, I'm not sure with that. That's different from an article. That seems like she was following the trial. It's, I don't know, that's the whole point. But I didn't see any such statement. That statement, I was following it in the paper, which both sides seemed to agree was a statement. They say it was having been made at the last hearing. I was following it in the paper. That referring to that declaration? I would assume so. I would assume so. The whole point is, is that the trial court made assumptions that are not supported by the record. And the Court of Appeals did the same thing. The problem is it would be unreasonable to assume, as the state argues that Gardner is not credible without an investigation, just as it's unreasonable to assume that the juror was not adversely influenced here. What did the Court of Appeal have before it? Did it have any articles? Did it have the article of the 12th? No, that would have been extrajudicial evidence, and I am not aware of anything of that kind being introduced. There was no habeas petition that was filed contemporaneous with the brief. It only had the appellate court record and, of course, the briefing of the parties. Well, did the appellate court record include the hearing for the motion for a new trial? No, and, in fact, I got the record from Dominique Asfali, who was the first trial attorney, and there were no newspaper articles there, but, of course, he's the one who refused to listen to Gardner. Well, how could the Court of Appeals have determined anything about whether it was a prejudicial article on any date if they didn't have the article? Well, that's the whole point. It made assumptions which the record doesn't support, and that's why a hearing was required. This was an offer of proof. The Court was apparently aware, whether it was brought in by Mr. Rios, of the additional articles. It was aware of them. It took them as an offer of proof, and perhaps they just didn't get filed. What happens now? What do we grant? What would be a form? If we were to grant the petition, what would be the form of it? I would ask for a new trial at this point. However, I know that the district court ordered a remand for an evidentiary hearing. A remand or granted contingent on there being an evidentiary hearing? Well, I think it would have to be contingent on an evidentiary hearing. And if that can't be done, I think we have to reverse. If that cannot be accomplished, you can't just assume that there was no misconduct, because there's prima facie evidence of misconduct. A colorable case was made of two kinds of misconduct. There is something wrong with the colorable case, and that is that the declaration in one respect can't be right, because what he said about the date is not possible either. Exactly. And that seems to be, whether it's administrative error on the part of Mr. Rios, where he put this motion for a new trial together and didn't realize, or a docket where he just put down the wrong date. This is successor and replacement counsel. Mr. Asfali was fired after the verdict was rendered, and the family went out and hired Ralph Rios, who is the one who brought the new trial motion. Does the court have any further questions? No, thank you, counsel. All right. Thank you, Your Honors. Just to clarify briefly as to what was in front of the Court of Appeal, the articles were not in the normal record, which is the clerk's transcript and the reporter's transcript, which this court normally sees as it gets to this stage. I've been looking in the record here of the hearing, and I recall, although I haven't found it, that there was a point where the trial court said something about lodging all the articles. And if that's true and then they were part of the court file, then maybe the Court of Appeal could have called them up and looked at them. I don't recall that being part of the California Court of Appeal's docket, however. Thank you. Submit. The case is arguably submitted.
judges: Reinhardt, Wardlaw, Berzon